[Gordon *v.* Inghram.]

# Gordon *versus* Inghram.

1. The legislature have no power to expound an act, by a subsequent act, so as to make the latter to operate retrospectively upon rights which vested before its enactment.

2. When the parties interested permit a proceeding to progress, which is repugnant to the privilege of sequestration, they shall be deemed to have waived it.

3. The Act of 24th January, 1840, does not require the appointment of a sequestrator, where the life estate of the debtor is claimed by one in actual adverse possession.

4. Where the debtor himself disclaims a life estate, and claims a fee, or where the creditor has reasonable grounds to believe that the debtor owns a fee, the proper way is to sell the debtor's interest in the lands at a sheriff's sale.

ERROR to the Court of Common Pleas of *Greene county.*

This was an action of ejectment, brought by defendant in error, who was plaintiff below, against the plaintiff in error, John B. Gordon, who was the landlord, and Harvey Renner, his tenant, for 130 acres of land. The plaintiff claimed that this land was devised to him *for life* by his father, and the defendant claimed that the plaintiff, Thomas Inghram, owned a *fee simple* in it by a former gift from his father ; but that whether Thomas Inghram owned a *fee,* or a *life estate,* his title was divested by sundry sheriff's sales.

The plaintiff offered in evidence the will of Arthur Inghram, dated Oct. 13, 1834, proven and registered in the proper office, Oct. 27, 1834, in which *inter alia* this land is devised as follows :

" I give and bequeath unto my son, Thomas Inghram, the plantation adjoining the aforesaid land, on which there is a stone house, being the same tract of land I purchased from Samuel Archer ; and further that after my son is deceased, that his son Thomas, called Zaar, is to have the said plantation." Upon this proof plaintiff rested.

The defendant, Gordon, in his behalf, offered proof of two sheriff's sales of the premises, sold both times as the land of said Thomas Inghram.

The first sale was made upon a decree in the Orphans' Court of Greene county, against Thomas Inghram, who had settled an account as the guardian of Thomas Porter, a minor, wherein a balance was found against said Inghram, of $357.75. By allowance of the said court, a writ in the nature of a *fieri facias* had issued, the land in dispute was levied upon, *and after a condemnation,* a *venditioni exponas* to June term, 1842, was issued, and the land sold to Wm. Rhodes for $200. A sheriff's deed was regularly acknowledged to said Wm. Rhodes for the land in dispute, and the $200—by an auditor's report,—appropriated to pay-

[Gordon *v.* Inghram.]

ment of liens against said Thomas Inghram. Deed from William Rhodes, purchaser aforesaid, to John B. Gordon, defendant, dated June 27, 1843. The defendant then offered in evidence a former ejectment, to March term, 1844, in which a verdict and judgment was entered for John B. Gordon, the plaintiff, against Thomas Inghram, and a *hab. fac. pos.* issued to March term, 1845, and the return of sheriff thereon of "possession delivered to plaintiff." The plaintiff then proved that he had kept possession from the time the sheriff delivered the premises to him till the present time.

The defendant then, in order to show a better outstanding title, gave in evidence the record of a judgment to Dec. term, 1845, *Jesse Hook, for use,* v. *Thomas Inghram,* debt, $59.17, *fi. fa.* issued thereon, Dec. term, 1845, and levied upon the land in dispute, *inquisition and a condemnation by a jury, vend. exp.* March term, 1846, and return of sheriff sold to R. W. Downey, for $300. Sheriff's deed to R. W. Downey, dated and acknowledged March 18, 1846.

The defendant then, further to maintain the issue on his part, adduced testimony to prove that Thomas Inghram, prior to these sales, always claimed a *fee simple* in the premises, and got the benefit of the two sales, and that the amount of these sales was applied to his debts, as before proven, and that his father, Arthur Inghram, had made a parol gift to him in or about the year 1816 or 1817, in pursuance of which, he had taken possession of the land, made valuable improvements, lived upon and occupied it until ousted by the writ of possession issued under the judgment obtained by J. B. Gordon, as before stated. That the land was assessed in the name of Thomas Inghram since the year 1817, prior to which, it had been assessed to his father.

The defendant requested the court to charge the jury as follows :

1. That the plaintiff is estopped after having the proceeds of two judicial sales applied to his indebtedness, without a tender to refund the amount so paid by defendant.

2. That if the land was held adversely to the plaintiff, though his interest was but a life estate, yet, if at the time of the seizure and sale on the judgment of Hook, it was yielding no rents, issues and profits, that Hook could have had applied to the extinguishment of his judgment, such sale would pass the title.

3. If a defendant, before the sale of his land by the sheriff, claimed an interest or title in the land which would be subject to levy and sale, and was in possession a long time under such title, and gets the advantage of a sale of a *fee simple* interest, it would be inequitable to allow him to set up against the sheriff's vendue a title or interest not subject to levy or sale.

[Gordon *v.* Inghram.]

The court answered the points in the negative. Verdict and judgment for plaintiff, Thomas Inghram. The answers of the court were the errors assigned.

*Downey, Sayers,* and *Rowe,* for plaintiff in error, referred to 8 W. 280; 1 Rawle, 163; 7 W. & S. 238; 7 W. 163; 4 Barr, 358; Act of 24th Jan., 1847; Stay Law of 1842; Act 24th Jan., 1849.

The facts raise this question; *might not a life estate in improved lands that yielded no rents, issues and profits, which the lien creditor could have applied to liens, and which is in the possession of one holding it adversely to the defendant, be sold on the ordinary process of execution?*

The Sequestration Act of 1840, could be brought into action only when the life estate was in two conditions, viz.: where it was in *improved land,* and where it was *yielding rents, issues and profits;* if either of these conditions were wanting, the act had no operation. It was supposed that *unimproved* land would yield nothing with which to pay debts, therefore it might be sold and not sequestered. It was also supposed that if the land yielded rents, issues and profits, that they would be the property of the life tenant, and it might be sequestered and not sold. But the object of the law doubtless was to secure the rents, issues and profits to the extinguishment of the claims of "lien creditors." Therefore where the estate yields nothing that the defendant is entitled to, or where it is in the possession of another, who claims the property thereof as his own, the law can have no application. Burrill's Law Dic. 923; 2 Bouv. L. Dic. 390.

As early as 1817, Thomas Inghram claimed the land in controversy, as his own, by virtue of a gift from his father; in pursuance of which, he built a stone house, erected other buildings, cleared land, and otherwise improved the same. He also planted out fruit trees, and paid all taxes assessed thereon, from that date till it was sold from him by the sheriff.

The property has been twice sold as his, by the sheriff, and the money applied to the payment of his debts. After receiving the proceeds of the sale, will the law now permit him to assert that he held but a life estate, or no title at all for this land? He induced others to purchase, and received the avails of the sale, and is now estopped from denying their title thus obtained; 10 Barr, 530; 9 Barn. & Cress. 577; *Nass v. Vanswearingen,* 10 S. & R. 146; 3 Rawle, 496; 2 P. R. 277; 16 S. & R. 198.

*Phelan* and *Montgomery,* for defendant in error, contended that a life estate in lands could not be sold under an execution, but the mode of proceeding to dispose of it must be by sequestra-

[Gordon *v.* Inghram.]

tion, as prescribed by the Act of Oct. 13, 1840. *Dennison's Appeal,* 1 Barr, 201; *Parget* v. *Stambaugh,* 2 Barr, 485; *Pentland* v. *Kelly,* 6 W. & S. 483; *Eyrick* v. *Hetrich,* 1 Harris, 438; *Inghram* v. *Gordon,* not yet reported.

To create an estoppel *in pais* as against a party, there must be an *admission* intended to influence the conduct of the man with whom the party is dealing, and actually leading him into a line of conduct which must be prejudicial to his interest, unless the party estopped be cut off from the power of retraction. This I understand to be the very definition of an estoppel *in pais.* Per Cowen, Justice, *Dalzell* v. *Odell,* 3 Hill, 219. In the same case it was declared by Bronson, J., that to constitute on estoppel *in pais,* as against a party there must be—

1. An admission inconsistent with the evidence which he has proposed to give, or the title or-claim which he proposes to set up.

2. An action by the other party upon such admission.

3. An injury to him by allowing the admission to be disproved. *Reynolds* v. *Louisburgh,* 6 Hill, 534.

The opinion of the court was delivered October 17, 1854, by LEWIS, J.—In 1843, it was held that, under the provisions of the Act of 13th October, 1840, a life estate in land could not be sold on execution, *after a lien creditor had applied for and obtained the appointment of a sequestrator.* It was also held, at the same time, that the application for the appointment of a sequestrator might be made "*at any time before the sale,*" *Pentland* v. *Kelly,* 6 W. & S. 483. On the 24th January, 1849, the legislature passed an act, declaring it to be the true intent and meaning of the Act of 1840, that the sale of a life estate was good and valid, unless some lien creditor procured the appointment of a sequestrator, "*on or before the return day of the first writ of venditioni exponas whereon a sale shall be advertised.*" Of course it is not in the power of the legislature to expound the meaning of the Act of 1840 by a subsequent act, so as to make the latter operate retrospectively upon rights which vested before its enactment. But it is worthy of remark, that the legislature as well as the judiciary have sanctioned the justice and good sense of the principle, that where the parties interested permit a proceeding to progress which is repugnant to the privilege of sequestration, they shall be deemed to have waived the benefit of the latter. It is plainly implied from the action of both, that if no sequestrator be appointed before the sale, the purchaser will take the debtor's title to the life estate. But in several cases subsequent to *Pentland* v. *Kelly,* it seems to have been determined in general terms, that a sheriff's sale of a life

[Gordon *v.* Inghram.]

estate in land passed no title, although the debtor made no objection to the proceeding, and although no lien creditor applied for a sequestration. If these cases are to be sustained, the debtor may stand by and witness the sale of his life estate, and the application of the proceeds to the payment of his debts, and then hold or take the estate from the purchaser, whose money discharged it from the encumbrances. *Dennison's Appeal*, 1 Barr, 201; *Parget* v. *Stambaugh*, 2 Barr, 485; *Snavely* v. *Wagner*, 3 Barr, 275; *Inghram* v. *Gordon*, not reported. We may regret the existence of these decisions, but our reluctance to disturb what has been decided, leaves them a foothold to which they are not entitled upon any other principle.

In this case, as now presented, two questions arise which do not seem to have been heretofore considered in this State. 1st. Does the Act of 1840 require a sequestration of a life estate, where there is a possession in hostility to it? 2d. Where the debtor himself disclaims the life estate and claims a fee, or where the creditor has reasonable ground to believe that the debtor owns the fee, does the Act of 1840 require the appointment of a sequestrator?

That act directs the appointment of a sequestrator only "whenever an estate for life, in any improved lands or tenements, *yielding rents, issues, or profits,*" shall be taken in execution. As the provisions of the act relate exclusively to the *estates of the debtor*, the "rents, issues, and profits" referred to, must necessarily mean those which the *debtor* receives, not those which *strangers* receive under titles and possessions in hostility to those of the debtor. The act operates only upon an *actual perception of profits*, not upon a *mere right of action* for them in tort, dependent upon a recovery in ejectment. At the time of the second sheriff's sale in 1846, there was an adverse possession under a prior sheriff's sale made in 1843; and that adverse possession had the additional sanction of a verdict and judgment in its favor. This was sufficient to toll the entry of the debtor. He had neither possession nor right of entry. He had nothing but a right of action. In general, according to the practice of the English chancery, a *chose in action* is not the subject of sequestration. The sequestrators may take possession only of goods and chattels which are in the *possession* of the defendant, or which can be *come at without suit or action.* 1 Danl. Ch. Prac. 637. They may also enter into possession of such parts of the defendant's real estate as are in "*in his own occupation,*" or "*in the occupation of his tenants.*" 1 Danl. Ch. Prac. 641. So, where a defendant conveys to a stranger, pending the suit, such a possession will not be regarded; but where there is a possession under an adverse title, it will be protected in chancery upon an exami-

nation, *pro interesse suo :* 1 Danl. Ch. Prac. 644. In this Commonwealth, where the adverse possession is held in good faith, and has not been acquired pending the suit, no court would disturb it by any summary process. The right of trial by jury would stand in the way of such a proceeding. It is not reasonable to suppose that the legislature intended to involve sequestrators in the endless litigation which might flow from the sequestration of mere rights in action to life estate. It is true that the act authorizes the sequestrator to sell the debtor's right; but if his estate is in such a condition that it must necessarily be sold, there is no reason why the sale should not be made by the sheriff. We are of opinion that the Act of 1840, does not require the appointment of a sequestrator, where the life estate of the debtor is claimed by one in actual adverse possession.

If a life estate is not the subject of sequestration, when the land is held adversely by a stranger, there is still less reason for such a proceeding when the life interest is disclaimed and repudiated by the debtor himself, under a claim to hold the premises in fee. The creditors are entitled to the value of the debtor's estate, whatever it may be. It is no part of the policy of the law to throw obstacles in their way. Where it is doubtful whether the debtor's interest is a life estate, or some other or greater estate, what is the creditor to do? If he sequesters it as a life estate, he deprives himself as well as the debtor, of the advantage of trying the debtor's title to the fee. If he sells it as a fee simple, he precludes himself from sequestering it as a life estate; for it cannot be supposed that the court would permit him to blow both hot and cold in the same breath. In such a case, the advantage to all parties of a sale of the debtor's interest, whatever it may be, is so obvious, that we have no hesitation in declaring it to be the proper course. In that method, the debtor and creditor get the full benefit of the debtor's interest; and the purchaser, knowing that he gets a life estate at least, with the advantage of a greater estate, if he can establish it by evidence, will of course bid a fair price. In the case before us, the debtor had been in possession more than twenty-one years, under a claim in fee simple, by virtue of a parol gift from his father, accompanied with valuable improvements. Both before and after the will he claimed the fee simple, and denied his father's right to limit him to a life estate. Under such circumstances, the creditors surely had a right to try his title to the fee simple, in the way most beneficial to all parties. That method was adopted without objection by any one, and we see no objection to it now. The debtor himself has surely no ground to complain.

The second and third points of the defendant below, should have been answered in the affirmative. Under the evidence as

presented in the paper book, the court might very properly have given a peremptory instruction against the plaintiff below.

Judgment reversed, and *venire facias de novo* awarded.

BLACK, C. J., and KNOX, J., dissented.